Morrison et ux., Appellants, *v.* Philadelphia Transportation Company.

Argued November 28, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Henry Panfil,* with him *Moore, Gossling & Panfil,* for appellants.

*Philip Price,* with him *Bernard J. O'Connell* for appellee.

OPINION BY MR. JUSTICE JONES, January 8, 1946:

The plaintiffs, husband and wife, sued the defendant for damages for injuries to the wife allegedly caused by the defendant's negligence. The learned trial judge entered a compulsory nonsuit on the ground that the evidence adduced failed to show the negligence alleged. The court en banc refused the plaintiffs' motion to take off the nonsuit in an order from which they severally appeal.

In reviewing the action so taken by the court below, we are required to view the oral evidence in the light most favorable to the plaintiffs, giving them the benefit of every fact which the jury might reasonably infer in their favor from the evidence received or erroneously excluded: *Kimble v. Wilson,* 352 Pa. 275, 277, 42 A. 2d 526. On that basis, the jury would have been warranted in finding the following facts.

About 10 o'clock P.M. on the night of July 1, 1943, Mrs. Morrison, the wife-plaintiff, boarded an outbound street car of the defendant company at 13th and Market Streets in Philadelphia, intending to go to 22nd and Spruce Streets, the car's place of stopping nearest her home on South 23rd Street. The car was being operated at the time as a one-man car, that is, it had but one attendant,—a motorman who acted also as the conductor. The car was not crowded; no passengers were obliged to stand; and Mrs. Morrison, upon entering the car, took a seat.

When the car, while later proceeding southward on 22nd Street, had passed Locust Street (the last stop before Spruce Street) two passengers who were sitting ahead of Mrs. Morrison arose and moved forward in the car. They stepped down at the end of the car floor to the motorman's platform where they stood just inside of the exit door. There was space on that portion of the platform for only two passengers at a time. Because of that, Mrs. Morrison, who had also arisen from her seat and had gone forward in the car, stood at the end of the car floor, holding on with her left hand to the upright

pole which ran from the middle of the floor at the front of the car to the ceiling. In her right hand, she held a handbag. She was concealed from the motorman's vision by a curtain which was drawn across behind him from the left hand side to the middle of the car. The curtain was for the purpose of shielding the motorman's eyesight from glare in the front window of reflections from lights behind.

The motorman brought the street car to a stop at the Spruce Street intersection at or near the north side of that street and opened the door for the exit of passengers. The two passengers ahead of Mrs. Morrison stepped down from the platform to which she then proceeded to descend. However, as soon as the two preceding passengers had alighted from the car and while Mrs. Morrison had her right foot poised in the air on its way to the platform, the motorman, without drawing back the curtain or looking around it to see if other passengers intended to leave and without so informing himself otherwise, "slammed the door shut and started his car." The unexpected starting of the car threw Mrs. Morrison off balance and broke her hold on the pole. She at once cried out, "Oh", whereupon, the motorman immediately brought the car to an abrupt stop. The whole operation of starting and stopping the car was practically one continuous act of very brief duration. The car, after the stop made following Mrs. Morrison's outcry, was still north of Spruce Street near the place of its original stop. As a result of the untimely starting and sudden stopping of the car while Mrs. Morrison was in the act of departing, she was thrown back violently against side seats of the car and thereby suffered the injuries for which she and her husband brought the suit here involved. At the time of the accident, Mrs. Morrison was eighty-two years old but was active and alert and quite capable of going about unattended. In fact, on the evening of her injury, she had just returned by bus from Atlantic City where she had gone alone that day. It is

of course unnecessary on a question of the defendant's *prima facie* liability to treat with the seriousness of the injuries thus suffered by the wife-plaintiff or the damages to which such injuries subjected her and her husband.

We entertain no doubt that the facts of this case, as the jury could have found them, were sufficient to support findings that the defendant's employee was negligent and that his negligence was the proximate cause of Mrs. Morrison's injuries. Certainly, it cannot be said that the defendant's freedom from negligence was so clear as to justify the entry of a compulsory nonsuit: see *Kimble v. Wilson, loc. cit. supra.*

The motorman's negligence lay in his failure to see that passengers who desired to leave the car at the alighting stop had a reasonable opportunity to do so in safety. Such, indeed, is the duty which rests upon a conductor: cf. *Redington v. Harrisburg Traction Company,* 210 Pa. 648, 651, 60 A. 305. In the instant case, the motorman was acting also as the conductor. In the *Redington* case, supra, "The negligence of the conductor consisted in his failure to look on both sides of the rear platform [for entering passengers, the car being on a single track line] before he gave the signal for the car to start." Inattention on the part of a street car attendant, such as not looking where he should be looking for the proper discharge of his duty, is alone sufficient to carry a case to the jury on a question of the attendant's want of care in the circumstances: cf. *Scerca v. Philadelphia Transportation Company,* 352 Pa. 152, 42 A. 2d 593, and cases there cited at pp. 155-156.

When the motorman in the present case had brought the car to a stop for the discharge of passengers, he could not, in his capacity as conductor, permit his vision of the passengers in the car to remain obscured by the screening curtain and assume that the only passengers intending to leave the car at the stop were those standing to his side on the platform. If he did that, the jury would

have been justified in finding him guilty of neglecting to do what the circumstances required of him. That is not to say that the presence of the curtain was, of itself, evidence of negligence. It was not. But, the interference with the performance of his duty which the motorman permitted the curtain to interpose would constitute negligence if the jury found that thereby he was prevented from seeing to it that all departing passengers had an opportunity to leave the car in safety. Whether the motorman was guilty of a want of care in the circumstances here present was peculiarly for the jury to determine.

The learned court below made point of the fact that Mrs. Morrison had not sounded the buzzer to signal her intention to leave the street car at the Spruce Street stop. That she did not do so was wholly immaterial inasmuch as the car did make the stop for the discharge of passengers. What this Court said in the *Redington* case, *loc. cit. supra,* is pertinent in this connection: "Much has been said in the argument for the appellant [Traction Company] about the lack of any signal by the plaintiff to indicate as the car approached that she wanted to board it. Her failure to signal might have excused the men in control of the car, had they failed to stop. But the car was stopped for one passenger upon the other side, and having thus stopped the car at a street crossing, where passengers were to be expected to get on, it was the duty of the conductor to give sufficient time to all persons who might wish to enter the car, to do so in safety." In the present instance, with the street car actually stopped at Spruce Street for the discharge of passengers, it was, no less, the motorman's duty to give to all persons, who might wish to leave the car, sufficient time to do so in safety.

The negligence in this case did not depend upon the manner in which the car was started or stopped. There is no claim or evidence that the car was operated with unusual or extraordinary violence. The fault here ascrib-

able to the motorman was his improper timing of the starting and stopping operation in its relation to the appropriate movement of a passenger who was in the act of descending to the platform in order to alight from the car which was already at a stand-still for the exit of passengers. The rule as to what must be shown in order to establish negligence where the violence of the jerking or jolting of a car is the subject of complaint (see *Smith v. Pittsburgh Railways Company*, 314 Pa. 541, 543, 171 A. 879) had no pertinency. Yet, the trial court, in explaining to the jury the legal reason for the withdrawal of the case from its consideration, did so in almost the exact words of the justification assigned in *Mervine v. Aronomink Transportation Company*, 348 Pa. 475, 476-477, 35 A. 2d 255, for the rule of the presently inapplicable *Smith* case, supra.

The order of the court below is reversed with a v. f. d. n.